IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| vs. | : | |
| MIGUEL ORTIZ,<br>  a/k/a "Miguelito," | : | NO. 11-251-08 |

DuBois, J.                                                                                           January 23, 2013

**M E M O R A N D U M**

**I.   INTRODUCTION**

Defendant is charged in the Third Superseding Indictment with: one count of conspiracy to distribute five kilograms or more of cocaine, twenty-eight grams or more of cocaine base ("crack"), and marijuana, in violation of 21 U.S.C. § 846; two counts of distribution of, and aiding and abetting the distribution of, five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2; and one count of distribution of, and aiding and abetting the distribution of, five kilograms or more of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2.

Presently before the Court is defendant's Motion for Pre-Trial Supervised Release Pending Government Appeal Pursuant to 18 U.S.C. § 3143(c). Defendant was initially detained following a hearing before Magistrate Judge Caracappa on December 23, 2011. He now argues that the government's evidence in this case has been substantially diminished by the Court's Order of July 20, 2012, suppressing evidence obtained through use of a GPS tracker. Because of the suppression Order, defendant contends that pretrial release is now appropriate.

The Court conducted a hearing on defendant's motion on December 10, 2012. At the hearing, the government submitted evidence by proffer supporting the continued detention of

1

defendant. Defendant also submitted evidence by testimony and proffer, which he argued warranted his release. For the reasons that follow, the Court denies defendant's Motion for Pre-Trial Supervised Release.

## II. LEGAL STANDARD

18 U.S.C. § 3142(e)(1) provides that a judicial officer shall order a defendant's detention pending trial "[i]f, after a hearing . . . , the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The government has the burden of persuading the Court by a preponderance of the evidence that the defendant poses a risk of flight if released pending trial or by clear and convincing evidence that the defendant is a danger to the community. United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986).

## III. FINDINGS OF FACT

Having reviewed the submissions of the parties and conducted a hearing on December 10, 2012, and incorporating the evidence received during the December 23, 2011, hearing on the government's motion for pretrial detention, the Court makes the following findings of fact:

1. There is probable cause to believe that from the fall of 2008 until March 30, 2011 defendant conspired to distribute five kilograms or more of cocaine, twenty-eight grams or more of cocaine base ("crack"), and marijuana.

2. There is probable cause to believe that on January 20 and 28, 2011 defendant knowingly and intentionally distributed, and aided and abetted the distribution of, five kilograms or more of cocaine.

3. There is probable cause to believe that on January 28, 2011 defendant knowingly and intentionally distributed, and aided and abetted the distribution of, five kilograms or more of cocaine, and that he did so within 1,000 feet of a school.

4. The government has proffered evidence of defendant's guilt, including the following:

   a. In January 2011, defendant was observed on multiple occasions, by physical surveillance as well as video cameras, entering a warehouse located at 3075 Jasper Street, Philadelphia, Pennsylvania.

   b. On March 30, 2011 agents searched the Jasper Street warehouse pursuant to a search warrant. They seized eight kilograms of cocaine, a loaded firearm, 171.2 grams of cocaine base, approximately $96,000 in cash, and tally sheets allegedly related to the drug operation.

   c. The government is prepared to offer witnesses who will testify that: (1) defendant delivered cocaine to a co-defendant in January 2011, (2) defendant's name appears in drug ledgers seized from the Jasper Street warehouse, and (3) defendant was active in the drug-trafficking organization at issue.

   d. Telephone records of the defendant, his co-conspirators, and customers of the drug trafficking organization involved in the case corroborate testimony that defendant called co-conspirators to arrange for the distribution of cocaine and the collection of cocaine proceeds.

   e. Defendant lost large amounts of money at gambling casinos during the time period of the alleged conspiracy. Specifically in 2009, he had $122,918 in net

    gambling losses, in 2010 his net losses totaled $322,836, and in 2011, prior to his arrest, his net losses were $35,697.

  f. From 2007 to 2011, defendant's gambling losses combined with real estate purchases he made exceeded his reported income by $703,808.

  5. An initial hearing was held on December 23, 2011 before Magistrate Judge Caracappa, on the government's motion for pretrial detention. The court concluded that defendant failed to rebut the presumption that he was a flight risk and a danger to the community under 18 U.S.C. § 3142(e)(3)(A). Accordingly, Magistrate Judge Caracappa ordered defendant detained pending trial.

  6. On July 20, 2012, the Court granted defendant's motion to suppress evidence obtained from a GPS tracker that was attached to defendant's car. That evidence included, <u>inter alia</u>, evidence that defendant was seen parked next to a tractor trailer in a truck depot. After the tractor trailer departed, law enforcement officers searched it and seized approximately $2.3 million in cash, and a canine sniff was positive for the presence of narcotics on the money.

  7. On August 7, 2012, the government filed a notice of appeal of the Court's Order suppressing such evidence. Pursuant to 18 U.S.C. § 3731, the government stated that "the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a material fact in the proceeding." The government withdrew the appeal on December 17, 2012.

  8. Defendant's criminal history includes a prior felony conviction. According to the bail report, on July 20, 1994, defendant pled guilty to possession, while on board an aircraft, of approximately 18 kilograms of cocaine, with intent to distribute. He was sentenced to, <u>inter alia</u>, 120 months' imprisonment and a five-year term of supervised release. His term of imprisonment

ended on March 19, 2003 and his five-year term of supervised release concluded in March of 2008.

9. The evidence against defendant is strong. It includes testimony from cooperating witnesses and law enforcement officers supporting the government's charges that defendant conspired to distribute, and did himself distribute drugs and collected drug proceeds.

10. The nature of the charges against defendant and the fact that if convicted he will be incarcerated for a mandatory minimum term of twenty years establishes his danger to the community and increases the risk that he will not appear as required by the Court.

11. Defendant lives in Puerto Rico but has some ties to the Philadelphia community. Several of defendant's family members live in Philadelphia, along with several members of defendant's wife's family.

12. In the 18 months preceding his arrest, defendant traveled to Mexico on three separate occasions.

13. As part of his proposed conditions of pretrial release, defendant has offered to post some 13 properties as collateral. However, six of the properties offered are owned by defendant, his wife, or jointly, and are therefore forfeitable upon conviction as proceeds resulting from the charged conspiracy or as substitute assets. While the remaining seven properties are owned by family members or friends, only one such property, owned by Benito Vazquez Hernandez and Aricelis Matos Rosado in Puerto Rico, included an appraisal of the property value, in the amount of $260,000.

14. At the December 10, 2012 hearing, defendant offered 38 letters from family and friends vouching for his character. Further, Denisia DeCarlo testified that she had previously

employed defendant as a custodian at the Norris Square Civic Association, and if defendant was released pending trial, she would offer him employment as a maintenance worker.

## IV. CONCLUSIONS OF LAW

In the motion papers and at the December 10, 2012 hearing, defendant made two general arguments regarding the evidence the Court may consider. First, defendant contended that, as a consequence of the suppression order of July 20, 2012, evidence obtained from the GPS tracker should not be considered by the Court. Second, defendant argued that the Court should not consider the government's proffers of expected testimony from confidential witnesses because the government did not produce Jencks material for the witnesses. The Court addresses defendant's arguments in turn before turning to an analysis of the appropriate factors under 18 U.S.C. § 3142(g).

A.  Suppressed GPS Evidence

Contrary to defendant's assertion, the Court may consider suppressed evidence in the context of pretrial detention. See 18 U.S.C. § 3142(f)(2)(B) ("The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."); United States v. Pina-Aboite, 97 F. App'x 832, 835 (10th Cir. 2004) (citing 18 U.S.C. § 3142(f)(2)(B) in holding that "[t]he district court did not err in considering the suppressed evidence and in finding that the weight of the evidence was against [defendant]."); see also United States v. Kinison, 2012 WL 4433296, at *4 (E.D. Ky. Sept. 24, 2012) (holding that suppressed evidence could be considered in pretrial detention hearing.)

The Court accordingly concludes that it may consider the suppressed evidence obtained from the GPS tracker. Such evidence is relevant as to defendant's dangerousness, as it bears on his involvement in the drug trafficking conspiracy at issue. See also United States v. Fulgham,

2012 WL 2792439, at * 4 (N.D. Cal. July 9, 2012) (stating in pretrial detention context, "[t]he Court considers the suppressed evidence in determining whether Defendant would be a danger to the community if he were to be released.") On the other hand, the Court concludes that the GPS evidence is not relevant to defendant's risk of flight as it has been suppressed and accordingly it would not provide an incentive to flee. Thus, the Court will consider the suppressed GPS evidence only as it relates to the danger to the community posed by defendant.

B.  Witness Statements

Additionally, at the December 10, 2012 hearing, defendant argued that the government could not proffer the expected testimony of confidential cooperating witnesses without providing him with the relevant Jencks material. Indeed, Criminal Rules of Procedure 26.2 and 46(j) make the Jencks Act, 18 U.S.C. § 3500, applicable to detention hearings. Fed. R. Crim. Pro. 26.2(a); Fed. R. Crim. Pro. 46. However, these rules only entitle the defendant to witness statements after the witness testifies at the hearing. Fed. R. Crim. Pro. 26.2(a). Further, as noted above, detention hearings are not subject to the rules of evidence pertaining to criminal trials. 18 U.S.C. § 3142(f)(2)(B). As such, the Bail Act permits "hearsay testimony" as well as proffers of evidence. See United States v. Accetturo, 783 F.2d 382, 388-89 (3d Cir. 1986) ("[T]he Bail Act permits hearsay testimony . . . ."); United States v. Mitan, 2009 WL 604695, at *3 (E.D. Pa. Mar. 6, 2009) ("The court has discretion whether to accept evidence by live testimony or proffer."). There is no requirement that the government produce a witness to testify at a detention hearing.

In United States v. Accetturo, the Third Circuit held that a district court had not abused its discretion by failing to compel the appearance of a witness at a pretrial detention hearing. 783 F.2d 382, 388-89 (3d Cir. 1986). The court noted that, "Congress has determined that the need for speed in reaching pretrial detention determinations justifies the use of procedures less

7

demanding than those applicable to a 'full-blown trial.' Moreover, in situations of this kind, there is an apparent, competing need to protect the identity of confidential informants and potential government witnesses." Id. at 390. The Accetturo court concluded that where the defendant specifically challenged the reliability of proffered witness statements, the district "judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." Id. at 389 (quoting U.S. v. Acevedo-Ramos, 755 F.2d 203, 207-08 (1st Cir.1985)); see also id. at 392 (finding no error where law enforcement officer testified as to statements made by sources whose identity remained confidential.).

In this case, given the ability of the parties to proceed by hearsay or proffer, the government was permitted to proffer the expected testimony of the witnesses. The defendant was then able to challenge the reliability of such information, if he so chose, by commenting on the proffers made by the government. However, at the initial bail hearing before Magistrate Judge Caracappa on December 23, 2011, defendant did not challenge the reliability of the government's proffers regarding expected witness testimony. Rather, defense counsel stated only that "this is a case that will rise and fall on the strength of their cooperators." (Hearing Transcript, December 23, 2011, at 29.) Further, at the hearing before the Court on December 10, 2012, defense counsel did not challenge the reliability of the proffered testimony but rather stated only that "it's unfair" to present the expected witness testimony without identifying those witnesses. (Hearing Transcript, December 10, 2012, at 93.)

Again, "[t]he decision whether to require evidence by live testimony or by proffer is within the discretion of the Court." United States v. Abdullahu, 2007 WL 1816010, at *2 (D.N.J. June 21, 2007). Defendant failed to challenge the reliability of the proffered testimony

and thus failed to establish a need for live testimony by the witnesses. In light of that fact, and in "light of the legitimate and established governmental interest in protecting government witnesses," the Court concludes that the expected confidential witness testimony proffered by the government may be considered for purposes of pretrial detention. Accetturo, 783 F.2d at 392.

C.  Statutory Factors

Having resolved defendant's discrete legal arguments, the Court considers defendant's motion pursuant to the applicable statute. As noted above, The Bail Reform Act, 18 U.S.C. § 3141 et seq., provides for pretrial detention only where a defendant poses a risk of flight or a danger to the community. The Act provides that where "there is probable cause to believe that [a defendant] committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)," "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

The Indictment charges defendant with violating provisions of the Controlled Substances Act and defendant faces a mandatory minimum twenty-year term of imprisonment. The rebuttable presumption of § 3142(e)(3)(A) thus applies so long as the Court finds probable cause to believe that defendant committed the offenses with which he is charged. An Indictment is "sufficient to support a finding of probable cause triggering the rebuttable presumption . . . under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). Based on the Third Superseding Indictment and the Court's factual findings stated above, the Court concludes that there is probable cause to believe that defendant committed the offenses for which he is charged

9

in the Third Superseding Indictment, and that the presumption under § 3142(e)(3)(A) applies to this case.

In this case, defendant has rebutted the presumption of detention by providing "some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). This evidence includes the 38 character letters submitted by family and friends, several properties offered as collateral for bail, and the fact that defendant would have an offer of employment if released prior to trial.

The Court must therefore examine defendant's motion in light of the applicable statutory factors under § 3142(g), which are: the nature and circumstances of the offenses charged, the weight of the evidence against defendant, the history and characteristics of the defendant, and the danger defendant poses to the community. To meet its burden of persuasion, the government must prove either by clear and convincing evidence that a defendant is a danger to the community or by a preponderance of the evidence that he poses a risk of flight if released pending trial. United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986).

1. Danger to the Community

The Court concludes, first, that the government has demonstrated by clear and convincing evidence that defendant is a danger to the community. The government has presented strong evidence that defendant conspired to distribute large amounts of drugs, and that he distributed such drugs on multiple occasions. The evidence noted above is varied and wide-ranging, and includes cooperator testimony, physical and visual surveillance, financial records, drug ledgers and telephone records. While this evidence is strong, the Court additionally considers the seizure of the $2.3 million in cash associated with GPS surveillance of defendant's car. As concluded

above, while the GPS evidence is suppressed for purposes of trial, it is relevant to defendant's dangerousness and is accordingly considered in this context. See also United States v. Strong, 775 F.2d 504, 507 (3d Cir. 1985) ("Congress intended to equate drug trafficking with danger to the community.") Finally, the Court notes that defendant was previously convicted of possession of a large quantity of cocaine with intent to distribute. Accordingly the Court finds by clear and convincing evidence that defendant would pose a danger to the community if released prior to trial, and that no condition or combination of conditions could reasonably assure the safety of the community.

    2. Risk of Flight

As noted above, while the suppressed GPS evidence may be considered regarding defendant's dangerousness, it is not relevant to defendant's risk of flight. Indeed, in his Motion, defendant claims that pretrial release is warranted because of the Court's Order suppressing the evidence obtained from the GPS tracker. Specifically, defendant argues that when the government appealed the Court's Order, the government averred that the appeal was "not taken for purpose of delay and that the evidence is a substantial proof of a material fact in the proceeding." 18 U.S.C. § 3731. Thus, defendant notes, the government itself claimed that the evidence suppressed in this case was substantial, and accordingly the weight of the evidence against defendant has been significantly diminished, warranting pre-trial release.

In support of this argument, defendant cites the recent order by Judge Pratter in United States v. Katzin. In that case, pre-trial release was granted after an order suppressing GPS evidence "effectively ended the prosecution of [the] case as almost all relevant evidence was suppressed." Government's Response and Memorandum of Law in Opposition to Defendants'

11

Motions for Bail at 2, United States v. Katzin, Civ. No. 11-226-3 (E.D. Pa. September 13, 2012). The Katzin case is distinguishable.

Unlike Katzin, in this case, even without the suppressed evidence, the government has strong evidence against defendant. This evidence includes witness testimony connecting defendant to the distribution of drugs and the collection of drug proceeds, physical surveillance by officers and defendant's financial statements. Accordingly, the Court concludes that Katzin is not persuasive with respect to the risk of flight issue.

Defendant additionally argues that he is not a risk of flight because he has offered numerous properties as collateral for possible bail, and would not jeopardize these properties by failing to appear. However, of the thirteen properties offered as collateral, six are owned by defendant or his wife, and such properties are forfeitable in the event defendant is convicted. The Court thus finds that the use of these properties "as collateral . . . because of [their] source, will not reasonably assure the appearance of the [defendant] as required." 18 U.S.C. § 3142(g)(4). Regarding the other seven properties, six have not been appraised, and the Court cannot accurately determine their worth, if any. The final property, owned by Benito Vazquez Hernandez and Aricelis Matos Rosado, was appraised at $260,000. The Court rejects defendant's argument.

In determining whether defendant is a flight risk, the Court must consider the statutory factors under 18 U.S.C. § 3142(g): the nature and circumstances of the offenses charged, the weight of the evidence against defendant, and the history and characteristics of the defendant. Those factors compel the Court to conclude that defendant is a flight risk. First, the crimes charged are serious drug trafficking offenses, and defendant is facing a maximum possible sentence of life in prison, a mandatory minimum of 20 years imprisonment and an $80,000,000

fine, thus giving him ample incentive to flee. Second, the evidence admissible against defendant at trial remains strong, as described above. Third, defendant lives in Puerto Rico and traveled to Mexico on three separate occasions in the eighteen months preceding his arrest. See United States v. Santiago-Pagan, 2009 WL 1106814 (M.D. Pa. Apr. 23, 2009) (holding that recent travel to family in Mexico supported finding of risk of flight). Finally, defendant's financial records, including his large gambling losses, establish that he has the capability to flee the Court's jurisdiction. The posting of the Hernandez-Rosado property and the other properties not owned by defendant or his wife does not overcome the evidence that defendant is a flight risk. The Court thus finds by a preponderance of the evidence that no condition or combination of conditions could reasonably assure defendant's appearance at trial.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion for Pretrial Supervised Release is denied. An appropriate order follows.